UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| YONNIE JACKSON, | No. 2:17-cv-01311-TLN-CKD P |
|---|---|
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JOSE MARTINEZ, | |
| Respondent. | |

    Petitioner is a California state inmate proceeding pro se with a federal habeas corpus application filed pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges his 2013 convictions stemming from the attempted murder of his estranged wife following his plea of not guilty by reason of insanity in the San Joaquin County Superior Court.[1] The three claims raised in the habeas corpus application center on petitioner's mental state at the time of the crimes based on his ingestion of Ativan and alcohol. The claims have been fully briefed by the parties. ECF Nos. 12, 22. Upon careful consideration of the record and the applicable law, the undersigned recommends denying petitioner's habeas corpus application for the reasons set forth below.

/////

/////

---

[1] Hereinafter referred to as "NGRI."

1

## I. Factual and Procedural History

### A. Procedural Background

The procedural history of this case at the trial court level is long and complicated. As such, this court will only recount that which is necessary to understand the pending claims for relief.

Following his entry of a plea of not guilty and not guilty by reason of insanity, petitioner was convicted by a jury of kidnapping, infliction of corporal injury on a spouse with great bodily injury, stalking, stalking in violation of a restraining order, and disobeying a court order involving prior domestic violence. See State Lodged Doc. No. 12 (direct appeal opinion); State Lodged Doc. No. 1, C.T. vol. 1 at 220 (not guilty and NGRI pleas), 259-260 (minute order recording jury's verdict). However, this jury deadlocked on the most serious charge of attempted premeditated murder and a mistrial was declared as to that count. See State Lodged Doc. No. 4, R.T. vol. VI at 1604-06. At a retrial in February 2013, petitioner was convicted of attempted murder involving great bodily injury. See State Lodged Doc. No. 12 at 4 (direct appeal opinion); State Lodged Doc. No. 7, R.T. vol. 4 at 1105-1106. After finding petitioner guilty, each jury was separately required to determine whether petitioner was sane at the time of the offenses. During the sanity phases of both trials, two separate juries determined that petitioner was sane at the time of the offenses. See State Lodged Doc. No. 4, R.T. vol. VII at 1782-1784 (first sanity verdict); State Lodged Doc. No. 6, C.T. at 221 (minute order of second sanity verdict). Petitioner was sentenced to a total aggregate term of 16 years, 8 months in prison. See State Lodged Doc. No. 7, R.T. vol. 5 at 1267 (sentencing transcript).

### B. Guilt Phase Evidence

The California Court of Appeal consolidated petitioner's appeal from both trials and affirmed the judgment on January 30, 2017.[2] See State Lodged Doc. No. 12 (direct appeal opinion). In rendering its decision, the California Court of Appeal summarized the facts as

---

[2] These factual findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

follows:[3]

> Petitioner married the victim in January 2001.[4] The victim said their marriage was plagued by petitioner's alcohol-fueled rages and described various physical altercations that he initiated. After the victim got a restraining order, petitioner stopped drinking and improved for awhile, but he started drinking again soon after moving back home.
>
> Petitioner minimized the marriage problems. He said all was well at home until the spring of 2011 when he became increasingly dizzy and nauseous and his doctor prescribed Ativan for anxiety. When the symptoms increased, his Ativan dosage was increased and he continued to drink on weekends, although he noticed he could not control himself and that friends and family were avoiding him. He also said he began losing track of time and waking up in strange places, although he never reported any of those symptoms to his primary care doctor.
>
> On cross-examination, petitioner acknowledged telling doctors in 2010 that he had 'marital issues' and strong feelings of anger but he said his violent urges were curbed by the prescription of a benzodiazepine, Xanax. The Ativan prescribed for him in the spring of 2011 was also a benzodiazepine. When he lost weight and began to need glasses, he blamed the Ativan and unsuccessfully tried to get his doctor to switch him back to Xanax. At trial, he said he realized much later that Ativan made him high.
>
> The victim said petitioner would drink a lot on weekends and whenever school was out. They worked for the same school district, but her schedule was year-round and his was not. One morning in early June, after school was out for him and he had been on a drinking binge for several days, he called her at work, demanding she come home and take him for medical treatment; he could not walk by himself, so she had to hold him up to get him to the car. A brain scan was normal, but the doctor prescribed an antidepressant and more Ativan.
>
> Additional evidence was provided of further physical altercations initiated by petitioner against the victim. Then, one night, petitioner locked himself in the bathroom with a pill bottle and the victim reported a potential suicide attempt to police. Petitioner hit an officer twice and resisted arrest even after officers pepper-sprayed him and stunned him with electricity; eventually they handcuffed him and removed him from the house. At trial, petitioner could not remember whether he actually took any pills.
>
> The victim obtained another restraining order. Later, however, the victim's son found petitioner inside the house, surrounded by

---

[3] Other than challenging their legal sufficiency, petitioner does not rebut the presumption of correctness that applies to these state court findings of fact. See 28 U.S.C. § 2254(e)(1).
[4] Due to the procedural posture of this case, all references to "defendant" in the direct appeal opinion have been changed to "petitioner."

> shattered glass and bleeding from a cut on his hand. Notes from petitioner's subsequent visits to an emergency room and psychiatric hospital recorded that petitioner was alert, oriented, had a steady gait but was suffering from alcohol dependence and anxiety disorder, and said petitioner denied having psychiatric symptoms. The notes mentioned nothing about blackouts. There was additional evidence that petitioner subsequently broke into the home and started a fire.
>
> On July 28, a court issued criminal and civil restraining orders prohibiting petitioner from contacting the victim. But petitioner subsequently attacked the victim at a Walmart parking lot. Police later found a tracking device attached to the victim's car that matched with a monitoring device petitioner had activated. Video footage from the Walmart parking lot showed that petitioner waited about twenty minutes in the parking lot, then ran toward the victim and intercepted her as she returned to her car.
>
> Witnesses described an intense beating: petitioner held her hair, beat her with his fist, pushed her into the passenger seat and tried to drive off, pulled her to the ground, kicked and stomped her with his boots, and repeatedly slammed the car door against her head. Petitioner did not stop when the victim lost consciousness. One witness described the beating as 'rag-dolling,' meaning petitioner threw the victim around like a pillow, sometimes banging her head against the car. Petitioner told bystanders who tried to stop the beating to leave him alone because he had a gun; when they told him he was hurting the victim, he looked at them as if to say, 'I know what I'm doing." Petitioner stopped only when an off-duty officer approached him with a gun. At that point, petitioner fled.
>
> Petitioner was arrested three days later after his vehicle was identified by police in a parking lot near a mental hospital. Petitioner said he had no recollection of being at the Walmart parking lot or being found in his car. He said his first recollection was waking up in jail and being offered an Ativan withdrawal regimen. There was no evidence of what substances he consumed on the day of the crimes, although a toxicology panel on the day of his arrest showed a blood alcohol content of .02 and no drugs.

State Lodged Doc. No. 12 at 2-4.

**C. Sanity Phase Evidence**

The California Court of Appeal recounted the evidence introduced during the sanity phases of petitioner's trials as follows:

> Petitioner admitted that he drank large amounts of alcohol on a regular basis but denied it caused any problems, despite recommendations from friends, family and medical doctors that he seek treatment for alcoholism. Alcohol dependence can lead to anterograde amnesia, or blacking out. Some prescriptions for anxiety and depression, including Ativan, can increase the risk of such blackouts. The defense expert presumed petitioner's amnesia was

4

caused by combining alcohol and Ativan, although she admitted she was aware of no evidence in the record that he had consumed either on the day of the crimes.

Petitioner's expert, a psychiatrist, diagnosed petitioner with depression, anxiety, and alcohol dependence. She also said he had narcissistic traits. Opposing experts made similar diagnoses. There was no direct evidence about petitioner's mental state on the day of the crimes, so experts had to rely on his medical records, the observations of witnesses at the crime scene and petitioner's testimony that he remembered nothing from that day and very little from the weeks preceding it.

The defense expert opined from petitioner's history of alcohol dependence, his Ativan prescription and his lack of recall, that petitioner was in a blackout state on August 15 and that, although he was capable of organized behavior and was not unconscious that day, he must not have been aware of the difference between right and wrong. Two expert witnesses appointed by the trial court disagreed, concluding unequivocally that petitioner may well have experienced blackouts but he did not meet the criteria to be considered legally insane. One of the court-appointed experts, a psychiatrist, explained that people in a blackout state are not unconscious and are capable of making decisions and thinking about what they are doing but they do not recall it later because their brains cannot transfer knowledge from short-term to long-term memory. The other expert, a psychologist, observed that, despite mild to moderate impairment from depression, petitioner had been able to complete a teaching credential with a 3.9 GPA and adequately manage coaching, child care and other life activities during the time he claimed to have been experiencing blackouts, so he could not have been out of touch with reality, and there were no other signs in the record of any mental disease or defect that affected his ability to understand right and wrong.

A court-appointed psychiatrist explained anterograde amnesia (blackout), emphasizing that it is not a form of unconsciousness, but rather an inability to mentally transfer current events to long-term memory. He had done 800 to 1000 insanity evaluations over 38 years. He said that people who experience blackouts might later have little or no memory of what happened or what they had done, but a lack of subsequent memory reveals nothing about their sanity. In fact, he said, it is impulse control, not cognition, that is impaired in a blackout and he concluded petitioner's understanding of right and wrong while the crimes were in progress was aptly demonstrated by his response to two people who tried to intervene in the beating: in response to one witness's implied threat with a raised fist, he claimed to have a gun and in response to another witness's pointed gun, he promptly stopped and fled. The psychiatrist said if petitioner had been cognitively impaired by alcohol and Ativan that day, as the defense expert opined, witnesses would have observed stumbling, slurred speech and the inability to talk or walk or carry out goal-oriented movement.

The other court-appointed expert, a psychologist, agreed there was no clear relationship between a claim of not remembering a criminal

5

>           incident and insanity and, in fact, in his 25 years of evaluating
>           insanity evidence, he had found it very common for sane criminal
>           defendants not to remember their crimes.  He agreed it was likely
>           petitioner was under the influence of alcohol and drugs at the time of
>           the crimes, but he disagreed with what to make of the fact that
>           petitioner committed a crime during daylight hours:  rather than
>           demonstrating an inability to grasp the wrongfulness of his act, he
>           thought it proved nothing more than indifference or lack of
>           inhibition, saying people take bold criminal actions all the time
>           because they do not expect to be caught or because they think they
>           won't have to pay the consequences.

State Lodged Doc. No. 12 at 8-10.

### D. Direct Appeal Decision

In a consolidated appeal from both jury verdicts, the California Court of Appeal affirmed petitioner's convictions on January 30, 2017.  See State Lodged Doc. No. 12.  In determining that the evidence was sufficient to prove that petitioner was conscious at the time of the assault, the state court rejected petitioner's argument that "a person with alcohol dependence who commits a violent crime after voluntarily consuming a drug that has an effect on the central nervous system akin to alcohol is involuntarily intoxicated and therefore 'unconscious' as a matter of law unless the prosecutor establishes the defendant was warned about and understood the intoxicating effects of the drug."  State Lodged Doc. No. 12 at 5.  In so doing, the Court of Appeal pointed out all of the evidence supporting the juries' determinations that petitioner was conscious.  State Lodged Doc. No. 12 at 6.  He "purposefully waited for and intentionally attacked the victim, constantly holding her hair with one hand so he could use his other hand to repeatedly hit her head, push her into the passenger seat, try to drive away while her feet were dangling outside, then pull her out of the vehicle to slam her head on the ground and against the vehicle while alternately stomping her face and chest."  Id.  All of this evidence supported the legal presumption of consciousness.  Id.  Petitioner's own expert acknowledged that such organized and purpose-driven actions undercut the argument that petitioner was unconscious at the time that he attacked his wife.  Id.  The Court of Appeal recognized that petitioner's defense of unconsciousness required a logical leap that was not supported by any evidence presented at trial.  State Lodged Doc. No. 12 at 7.  Namely, there was no defense evidence presented that petitioner had even consumed Ativan on the day of the attack.  Id.  This gap in defense evidence combined with the standard of review for

1 sufficiency challenges, did not warrant setting aside the juries' verdicts that rejected petitioner's
2 defense of unconsciousness.
3       Petitioner also challenged the sufficiency of the evidence supporting the two separate jury
4 verdicts that he was sane at the time of the offenses. Under California law, the sanity standard
5 involves determining whether the defendant "was able to understand the nature and quality of the
6 criminal acts or to distinguish between right and wrong when the defendant committed the act"
7 State Lodged Doc. No. 12 at 8 (recognizing the adoption of the M'Naghten standard from English
8 common law). In reviewing the expert testimony on the issue of petitioner's sanity, the Court of
9 Appeal emphasized that "[t]here was no direct evidence about defendant's mental state on the day
10 of the crimes, so experts had to rely on his medical records, the observations of witnesses at the
11 crime scene and defendant's testimony that he remembered nothing from that day and very little
12 from the weeks preceding it." State Lodged Doc. No. 12 at 8. While acknowledging that
13 petitioner's mental health expert opined that he lacked the capacity to appreciate the difference
14 between right and wrong, the Court of Appeal emphasized that this "expert was a newly-certified
15 forensic psychiatrist who had never testified about a defendant's sanity before." State Lodged
16 Doc. No. 12 at 8. In contrast, the two court-appointed experts who had 38 and 25 years of
17 experience, respectively, in conducting sanity evaluations, concluded that even though petitioner
18 may well have experienced blackouts, he did not meet the criteria to be considered legally insane.
19 State Lodged Doc. No. 12 at 9-10. The California Court of Appeal determined that there was
20 sufficient evidence to support the juries' rejection of petitioner's insanity defense "find[ing] no
21 reason to question the juries' assessment of [the] competing evidence. State Lodged Doc. No. 12
22 at 10.
23       In his last claim for relief on direct appeal, petitioner challenged the trial court's jury
24 instructions that explained the burden of proof. Specifically, petitioner argued that the
25 instructions failed to inform the jury that the prosecution had the burden of proving beyond a
26 reasonable doubt that petitioner was voluntarily intoxicated. According to petitioner, the trial
27 court's failure to sua sponte instruct the jury in such a manner violated his right to due process.
28 In rejecting this claim, the Court of Appeal noted that the trial court accurately instructed the jury

7

on the defense of unconsciousness as well as voluntary and involuntary intoxication, circumstantial evidence, mental state, and the burden of proof.  State Lodged Doc. No. 12 at 10. Since the defense did not request any other specific theory of defense instruction from the trial court, petitioner argued on appeal that the instructions given, *en toto*, somehow led the jury to misunderstand the burden of proof on petitioner's mental state.  The Court of Appeal denied relief "find[ing] no basis to conclude the instructions given were reasonably susceptible to the sort of misinterpretation suggested by defendant." State Lodged Doc. No. 12 at 11.

**E.  2254 Petition**

On federal habeas review, petitioner raises the same three claims for relief that were presented on direct appeal.  First, petitioner contends that the evidence was not sufficient to support the jury's determination that he was conscious at the time of the offense in violation of due process.  ECF No. 1 at 9-11.  In support thereof, he argues that his affirmative defense of involuntary intoxication based on ingestion of Ativan and alcohol led him to blackout at the time of the offense.  Even though there was no evidence presented that petitioner consumed Ativan on the day of the offense, petitioner suggests that the "historical backdrop" leading up to the events is sufficient to establish his involuntary intoxication.  ECF No. 1 at 9-10.

Next, petitioner challenges the two separate juries' determinations that he was sane at the time of the offense as not supported by sufficient evidence in violation of due process.  ECF No. 1 at 4.  In his opening brief on direct appeal, petitioner argued that "no rational juror could have rejected overwhelming evidence that, because of severe involuntary intoxication and the mental disease, defect, or disorders that lead to the Ativan prescription, [petitioner] did not understand the distinction between right and wrong." Lodged Doc. No. 9 at 65.

Lastly, petitioner asserts that he was deprived of a fair trial because the trial court did not sua sponte instruct the jury on which party has the burden of proof and the nature of that burden of proof concerning petitioner's defense of unconsciousness.  According to petitioner, this last error affected the juries' determinations at both the guilt and sanity phases of the trial.  ECF No. 1 at 62.  "The natural inclination of a juror would be to decide whether or not petitioner's intoxication was voluntary rather than whether the evidence of unconsciousness evidence raised a

1 reasonable doubt." ECF No. 1 at 63. Apparently, the trial court omitted a necessary jury instruction, but petitioner does not indicate what that instruction should have specifically said.

Respondent first contends that the state court did not unreasonably apply the Jackson v. Virginia, 443 U.S. 307 (1979), standard governing the first two sufficiency of the evidence challenges that petitioner raises. ECF No. 12 at 25-32. A reasonable juror could have determined that petitioner was conscious at the time of the offenses based on the goal-oriented behavior that petitioner engaged in both before, during, and after his arrival at the Walmart parking lot. ECF No. 12 at 26. Furthermore, "[a] reasonable trier of fact could have credited the opinions of the well-experienced court-appointed psychiatrist and psychologist that [p]etitioner was sane and reject the contrary opinion of the novice defense expert psychiatrist." ECF No. 12 at 31. According to respondent, petitioner has not demonstrated that the state court's determination of the facts was unreasonable in light of the record evidence to be entitled to habeas relief. ECF No. 12 at 27. With respect to claim three, respondent asserts that it is entirely conclusory, unexhausted, and procedurally defaulted based on California's contemporaneous objection rule because the defense did not request any specific pinpoint jury instruction further defining the burden of proof. ECF No. 12 at 14, 32-. Addressing claim three on the merits, respondent counters that a fair minded jurist could agree with the state court's rejection of this claim by reviewing the jury instructions as a whole, as is required by federal law. ECF No. 12 at 36-37. "An examination of the entire instructions supports a conclusion that any failure to address the People's burden of proof as part of the voluntary/involuntary intoxication instructions did not render those instructions incorrect or inadequate." ECF No. 12 at 37. For all these reasons, respondent requests that petitioner's habeas application be denied.

In his traverse, petitioner clarifies his jury instruction challenge and argues that the state court unreasonably applied Sullivan v. Louisiana, 508 U.S. 275 (1993). ECF No. 22 at 9. "Specifically, petitioner contends that the jury instruction defining 'involuntary intoxication' (i.e. CALCRIM 3427 is defective in the context that it does not clearly state the 'type' of 'effects' (besides 'intoxicating effects'), that would… lead a reasonable jury to be specifically apprised

////

and on[] 'notice' of 'unknown side-effects,' that were not presented by the prosecution."[5]  ECF No. 22 at 10.[6]

In his supplemental traverse, petitioner emphasizes the lack of warnings that he received from his health care providers about the side effects of Ativan.  The warnings on Ativan use were relevant to the juries' determination about whether petitioner's intoxication was voluntary or involuntary.  To the extent that petitioner is trying to supplement the evidence on the record, this court cannot rely on evidence outside of the trial record when conducting its review of the sufficiency of the evidence claims.  See McDaniel v. Brown, 558 U.S. 120 (2010) (per curiam) (reversing the grant of federal habeas relief because the lower courts did not confine their review of the sufficiency of the evidence claim to the evidence admitted at trial).  For this reason, petitioner's averments in his supplemental traverse have not been considered by the court.

**II.   Legal Standards**

**A.  AEDPA Standard**

To be entitled to federal habeas corpus relief, petitioner must affirmatively establish that the state court decision resolving the claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or … resulted in a decision that was based on an unreasonable determination

---

[5] CALCRIM 3427 defines involuntary intoxication.  Both juries were given this instruction at the guilt/innocence phase of petitioner's trials at the request of the defense.  The instruction as given states as follows:

> Consider any evidence that the defendant was involuntarily intoxicated in deciding whether the defendant had the required (intent/[or] mental state) when he acted.  A person is involuntarily intoxicated if he unknowingly ingested some intoxicating liquor, drug, or other substance, or if his intoxication is caused by the force, duress, fraud, or trickery of someone else, for whatever purpose, without any fault on the part of the intoxicated person.

See State Lodged Doc. No. 1, C.T. Vol. 2 at 332; State Lodged Doc. No. 6, C.T. Vol. 1 at 119.
[6] Based on petitioner's argument, it appears to the court that he is actually referring to the jury instruction on voluntary intoxication.  The juries were instructed that: "A person is voluntarily intoxicated if he becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect."  State Lodged Doc. No. 1, C.T. Vol. 2 at 331; State Lodged Doc. No. 6, C.T. Vol. 1 at 118.

of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000) ] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

### B. Sufficiency of the Evidence Standard

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution."  Id. at 326.

/////

**C. Standard Governing Jury Instruction Challenge**

Erroneous jury instructions do not support federal habeas relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643(1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]' "). The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record overall. Estelle, 502 U.S. at 72. Moreover, relief is only available if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 72–73. A challenge to the absence of a particular jury instruction is subject to the same standard, but is more difficult to establish any resulting prejudice. See Henderson v. Kibbe, 431 U.S. 145, 155 (1977) (recognizing that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law" and, therefore, a habeas petitioner whose claim of error involves the failure to give a particular instruction bears an "especially heavy" burden).

### III. Analysis

This court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, 138 S. Ct. 1188 (2018) (adopting the Ylst look through presumption to silent state court denials of relief even after the decision in Harrington v. Richter, 131 S. Ct. 770, 785 (2011));see also Ylst v. Nunnemaker, 501 U.S. 797 (1991) (establishing the "look through" doctrine in federal habeas cases). In this case, the last reasoned state court decision denying all three claims for relief is the California Court of Appeal decision. Therefore, this court is tasked with determining whether the California Court of Appeal decision was contrary to or an unreasonable application of clearly established federal law or unreasonably determined the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d).

**A. Sufficiency Challenge to Petitioner's Consciousness at Time of Crimes**

In his first claim for relief, petitioner contends that the evidence was insufficient to

convict him based on his defense that he was unconscious at the time of the offenses. Petitioner's defense of unconsciousness was due to his use of prescription Ativan combined with his alcohol consumption rendering him involuntarily intoxicated. The California Court of Appeal began its discussion of this issue by noting that only involuntary intoxication was a complete defense and that alcohol dependence was not sufficient to establish that one's intoxication was involuntary. See State Lodged Doc. No. 12 at 5. The state court rejected petitioner's argument by noting that "even [petitioner's] own expert acknowledged his purposefulness and organization during a presumed blackout state and distinguished it from unconsciousness." State Lodged Doc. No. 12 at 6. This expert testimony combined with "the savageness of the attack; …[petitioner's] escalating pattern of rage and violence over a period of years, and especially in the weeks before the crime; the use of an electronic device allowing him to monitor the victim's vehicle and his apparent use of it to lie in wait and attack her by surprise; and the fact that he warned others away from the scene by claiming to have a gun but fled when confronted by a law enforcement officer" was sufficient to support the jury's verdict. State Lodged Doc. No. 12 at 7.

Based on this court's review of the trial testimony, the California Court of Appeal's rejection of this claim was neither contrary to nor an unreasonable application of the Jackson sufficiency standard. The state court decision that there was no evidence that petitioner "even consumed Ativan on the day of the crimes" is not an unreasonable determination of the facts in light of the trial testimony. See 28 U.S.C. § 2254(d)(2). The emergency room doctor who treated petitioner on August 18, 2011 testified that there was no medical evidence showing what medication petitioner "was actually taking" as opposed to what he "had been prescribed." State Lodged Doc. No. 4, R.T. Vol. V at 1182-83. This evidentiary gap combined with the testimony that petitioner never complained of experiencing blackouts to any of his doctors while on Ativan, severely undercut petitioner's affirmative defense of unconsciousness. See State Lodged Doc. No. 7, R.T. Vol. III at 706 (testimony of petitioner's primary care physician, Dr. Joves, indicating that petitioner did not express any side effects from taking Ativan in the past); State Lodged Doc. No. 7, R.T. Vol. III at 816-817 (testimony of Sacramento County jail physician, Dr. Janet Abshire indicating that petitioner only noted a past medical history for a heart problem and suicidality).

Indeed, the questions from the first jury in this case demonstrated a careful weighing of the competing testimony on this point. See State Lodged Doc. No. 1, C.T. Vol. I. at 258 (jury question requesting a readback of Dr. Tara Collins' testimony, the defense expert witness); State Lodged Doc. No. 4, R.T. Vol. VI at 1569-1570 (jury question concerning unconsciousness and trial court's re-reading of unconsciousness, voluntary, and involuntary intoxication instructions). Here, applying the doubly deferential Jackson standard of review, a rational jury could have found sufficient evidence that petitioner was conscious at the time that he assaulted his estranged wife and therefore rejected his affirmative defense. See Boyer v. Belleque, 659 F.3d 957, 964-65 (9th Cir. 2011) (emphasizing that in a federal habeas action, the review of a sufficiency of the evidence challenge is doubly deferential). After reviewing the state court record in the light most favorable to the jury's verdict, this court concludes that there was sufficient evidence introduced at petitioner's trial that he was conscious. Therefore, the state court's denial of this claim was not an unreasonable determination of the facts nor contrary to federal law. 28 U.S.C. § 2254(d). Accordingly, the undersigned recommends denying petitioner's first claim for relief.

**B. Sufficiency Challenge to Jurys' Findings That Petitioner Was Sane**

Next, petitioner challenges the sufficiency of the evidence supporting the juries' findings that he was sane at the time of the offense. In this claim petitioner criticizes how the two juries ultimately weighed the competing testimony by the mental health experts who rendered opinions on petitioner's sanity at the time of the offenses. He faults the juries for not believing his mental health expert who opined that petitioner could understand the nature and consequences of his actions at the time of the incident, but not the difference between right and wrong. State Lodged Doc. No. 4, R.T. vol. III at 824-827.[7] In contrast, two court-appointed forensic experts concluded that petitioner's alcohol and Ativan use impaired his judgment and impulse control, but it did not render him "incapable of appreciating the nature and quality of his actions" or of understanding the difference between right and wrong. State Lodged Doc. No. 4, R.T. vol. VI at 1635-36, 1640

---

[7] The defense expert, Dr. Tara Collins, was not available at the time of the sanity phase of petitioner's trial so her previous conditional examination was read for the jury. See Lodged Doc. No. 4, R.T. Vol. VI at 1621-22 (admitting her conditional examination into evidence).

14

(sanity opinion testimony of John Chellsen, PhD.); State Lodged Doc. No. 4, R.T. vol. VI at 1672-1680 (opinion testimony of Dr. Gary Cavanaugh). Petitioner simply disagrees with the credibility determinations made by not one, but two separate juries finding him sane at the time of the offenses. However, a jury's credibility assessment is entitled to great deference on habeas corpus review. See Jackson v. Virginia, 443 U.S. 307, 326 (1979) (holding that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir.2004). In order to be entitled to relief, this court would have to find that two separate juries' got the credibility contest not only wrong, but wrong to such an extent that no fair minded jurist could find sufficient evidence that petitioner was sane at the time of the offense. This court is unable to reach that conclusion in light of the evidence presented in state court. Petitioner has the burden of demonstrating that no rational trier of fact could have found him sane and that no rational trier of fact could have agreed with the juries' sanity decisions. Applying this standard of review, the state court's decision denying relief on this claim is neither contrary to nor an unreasonable application of clearly established federal law. Therefore, the undersigned recommends denying petitioner's second claim for relief.

    **C.  Jury Instruction Challenge**

    In his last claim for relief, petitioner asserts that the trial court erred in failing to instruct the jury that the prosecution had the burden of proving the voluntariness of appellant's intoxication beyond a reasonable doubt. Here, in essence, petitioner is challenging the trial court's failure to give a pinpoint instruction on his theory of defense that would have clarified the burden of proof concerning intoxication. However, the defense never requested any such pinpoint instruction at trial. Therefore, this claim boils down to a federal constitutional challenge to the absence of a jury instruction that was never requested. For this reason, respondent contends that claim three is procedurally defaulted based on California's contemporaneous objection rule. See ECF No. 12 at 14 (citing Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981)). While respondent argued on direct appeal that this claim had been waived based on the

15

failure to request "amplification or explanation" of the burden of proof, the California Court of Appeal assumed without deciding that the "error had been preserved…." State Lodged Doc. No. 12 at 11; see also Stated Lodged Doc. No. 10 at 77 (Respondent's brief).  In light of this procedural history, the undersigned elects to bypass the issue of procedural default and address this claim for relief on the merits.  See Lambrix v. Singletary, 520 U.S. 518, 522–25 (holding that a federal court need not invariably resolve a state procedural bar issue first where it presents complicated issues of state law and the other issue is easily resolvable against the petitioner); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (proper to proceed to merits where procedural bar issue more complicated and result the same).

In denying relief on the merits, the state court found no due process violation because the jury instructions given were not "reasonably susceptible to the sort of misinterpretation suggested by petitioner." State Lodged Doc. No. 12 at 11.  The constitutional question at issue is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based upon proof insufficient to meet the Winship standard.  Victor v. Nebraska, 511 U.S. 1, 5–6 (1994) ("[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there was a reasonable likelihood that the jury did so apply it.").  Petitioner does not suggest, much less point to any portion of the record, that would indicate, that the jury misinterpreted the instructions given.  His argument is purely speculative.  This case does not involve a situation where the jury instructions misdescribed the prosecution's burden of proof.  Compare Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (finding structural error applied where the burden of proof was not accurately described for the jury).  Therefore, petitioner's argument that habeas relief is warranted because the state court unreasonably applied Sullivan is simply inaccurate.  Since the jury was properly instructed on the correct burden of proof and the jury instructions given as a whole do not suggest any ambiguity or misinterpretation by the jury, the state court did not unreasonably apply Supreme Court jurisprudence in rejecting this claim.  See Hedgpeth v. Pulido, 555 U.S. 57 (2008) (per curiam) (reversing grant of habeas relief on jury instruction claim finding harmless error analysis applied); Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  Accordingly, federal habeas relief is not warranted on this claim.  See

1 | Mendez v. Knowles, 556 F.3d 757 (9th Cir. 2009) (denying habeas relief because there was "no reasonable likelihood the jury applied the wrong burden of proof").

### IV. Plain Language Summary for Pro Se Party

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed your habeas corpus application and the trial court record in your case. The undersigned is recommending that your habeas petition be denied on the merits. If you disagree with this result, you have 21 days to explain why it is incorrect. Label your explanation "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will then review the entire record and make the final decision in your case.

### V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

/////
/////
/////
/////
/////

Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 26, 2021

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/jack1311.F&R.docx